<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ROSA CAROLINA GERMANO DOS SANTOS ET AL. FOR AN ORDER UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM BAYER HEALTHCARE PHARMACEUTICALS INC. AND BAYER HEALTHCARE, LLC | Civil Action No.  22-1567 (ES)<br><br><br>OPINION |

<u>ALLEN, U.S.M.J.</u>

Before the Court are two related motions filed by Respondents Bayer Healthcare Pharmaceuticals, Inc. ("Bayer Inc.") and Bayer Healthcare, LLC ("Bayer LLC") (sometimes collectively, "Respondents" or "Bayer"). The first is Respondents' motion to quash subpoenas for documents and deposition testimony, ("motion to quash"), served upon them by Rosa Carolina Germano Dos Santos et al. ("Petitioners"). (ECF No. 25). The second is Respondents' motion to strike, ("motion to strike"), the Third Declaration of Petitioners' counsel, Dr. Jan Erik Spangenberg ("Spangenberg") . (ECF No. 28). [1]  Petitioners oppose both motions.  (ECF Nos. 26, 29, & 32). No oral argument was heard pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, and

---

[1]  Dr. Jan Erik Spangenberg is Petitioners' German counsel.  In this case, Petitioners have submitted three supporting declarations from Spangenberg. The first two were in submitted support of their *ex parte* § 1782 application and are not at issue here.  The third declaration, which was submitted in opposition to Respondents' pending motion to quash, is the subject of Respondents' motion to strike.

for good cause shown, Respondents' motion to quash is **DENIED**. Respondents' motion to strike is **GRANTED**.

## I.    RELEVANT BACKGROUND

Petitioners consist of 387 women who have allegedly suffered, and continue to suffer, injuries from Essure permanent birth control implants ("Essure"). (ECF No. 1-1 ¶¶ 39-40; ECF No. 1-2 Exh. 1; ECF No. 1-3 ¶ 6 and Ex. 2). Petitioners specifically allege that between approximately June 6, 2013 and December 2018, Essure was marketed as a Bayer product in Brazil. (ECF No. 1-1 ¶¶ 1-7, 29). According to Petitioners, Essure was developed in 1998 by the United States based company Conceptus, Inc. (*Id.* at ¶ 1).  Petitioners continue that on June 5, 2013, Bayer AG, Respondents' German parent company, acquired Conceptus.   (*Id.* at ¶ 5). Petitioners further allege that once acquired, Conceptus became a wholly owned subsidiary of Respondent Bayer LLC, a United States based company; thereafter, Conceptus was renamed Bayer Essure Inc. and subsequently transferred nearly all of its operating tangible assets and liabilities to Bayer LLC.  (*Id.* at ¶ 6).  Additionally, after the acquisition, "Bayer Healthcare, LLC became the entity directly responsible for the manufacturing, assembly and research and development of Essure contraceptive coils," while Bayer Inc. assumed among other functions, "marketing, sales, and distribution in the United States."[2]  (*Id.* at ¶¶  8-9).

In July 2021, Petitioners sent a demand letter to Bayer AG threatening a products liability lawsuit in the Regional Court of Cologne, Germany. (ECF 1-2 Ex. 2 at 107-18). Bayer AG rejected Petitioners' demand. (*Id.* at 129-31).  Yet, Petitioners did not immediately sue.  Instead, on March 21, 2022, they filed an *ex parte* application in this Court, pursuant to 28 U.S.C. § 1782, seeking to

---

[2] As their motion papers confirm, Respondents do not deny that they are involved with the manufacturing, development, marketing and/or sale of the Essure implants. (*See generally* ECF Nos. 25 & 27). Further, Respondents do not dispute that they are both New Jersey subsidiaries of Bayer AG.  (ECF No. 25-1 at 2 & 19; ECF No. 27 at 13).

serve Respondents with discovery subpoenas for documents and deposition testimony in aid of their anticipated German lawsuit against Bayer AG. (ECF No. 1). Claiming that Respondents, which have their principal places of business in this District, possess useful information for their anticipated lawsuit against Bayer AG, Petitioners sought to serve the subpoenas on Respondents.

To that end, Petitioners submitted four proposed subpoenas as part of their Section 1782 application: two document subpoenas with thirty-nine requests for production of documents and two deposition subpoenas with twenty-eight topics. (ECF No. 1-3 Exs. 15-18 at 237-97). Petitioners also submitted a sworn declaration from Spangenberg, detailing pre-litigation efforts and investigation, legal theories (which include a manufacturing defect, failure to warn, and failure to prevent dangerous misconduct), and critical factual issues for trial. (ECF 1-2 ¶¶ 7-11 at 1-2). Based on this Court's review of the *ex parte* submission and supporting declarations, on July 22, 2022, this Court issued an Order, granting Petitioners' application without prejudice to Respondents' right to move to quash or modify the subpoenas. (ECF No. 3). Petitioners served their proposed subpoenas on Respondents. (ECF No. 26 at 1).

On October 18, 2022, after an unsuccessful meet and confer, Respondents requested leave to file a motion to quash the subpoenas. (ECF No. 4). Following a Telephonic Status Conference on November 3, 2022, the Court granted Respondents leave. The instant motions to quash and strike ensued.[3]

---

[3] As the parties failed to comply with Local Civil Rule 7.1(d)(1) and the Court's briefing schedule, the Court directed the parties to refile all their papers on January 23, 2023.  (ECF No. 24). The parties so complied.  (*See* ECF Nos. 25-30).  Additionally, this Court issued an Order on May 18, 2023, (ECF No. 33), granting the parties' respective requests to submit supplemental letters in connection with Respondents' motion to quash.  (ECF No. 31 & 32).

## II.   RESPONDENTS' MOTIONS

### A.  Respondents' Motion to Quash

Respondents argue that Petitioners' subpoenas should be quashed because they fail to meet Section 1782's statutory requirements as well as the discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Respondents also advance two other independent arguments in support of quashing the subpoenas. First, Petitioners' anticipated lawsuit would be preempted by federal law if filed in this District.  Second, Petitioners' claims would not succeed if adjudicated on the merits because other Essure related actions filed in Brazil against Bayer entities have been decided in favor of the defense. [4] (ECF No. 25-1 at 36-40).

### B.  Respondents' Motion to Strike

As part of Petitioners' opposition to the motion to quash, they include a third declaration from Spangenberg dated December 23, 2022 ("the Third Spangenberg Decl.").  Respondents now move to strike it.  They argue that the Third Spangenberg Decl. is speculative and argumentative, and thus violates Local Civil Rule 7.2(a). (ECF No. 28-1 at 1-6). They further argue that the Third Spangenberg Decl. is, in essence, a supplement to Petitioners' opposition brief, and thus the brief exceeds the page limits set forth in of Local Civil Rule 7.2(d).  (*Id.*)

## III.   DISCUSSION

### A.  Motion to Quash

#### 1.     Legal Standards

Section 1782 is designed "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among

---

[4] Respondents also contend the discovery would be barred if sought in Germany.  This is not a separate basis to support its motion to quash. Rather, Respondents rely on a nearly identical argument to challenge Petitioners' assertion that they satisfied the second statutory requirement and two of the discretionary factors.

world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191–92 (3d Cir. 1998), as amended (July 23, 1998).   The statute authorizes district courts to order discovery from United States residents for use in foreign proceedings. *See* 28 U.S.C. § 1782; *Intel Corp.*, 542 U.S. at 242; *In re O'Keeffe*, 646 F. App'x 263, 265 (3d Cir. 2016).   A court may issue such an order on an *ex parte* basis without prejudice to the subpoenaed party's right to vacate the order or quash any resulting subpoenas. *In re Yilport Holding A.S.*, No. 22-3028, 2023 WL 2140111, at *3 (D.N.J. Feb. 21, 2023).

As the Third Circuit has made clear, the standards governing the scope of discovery under the Federal Rules of Civil Procedure should apply to discovery sought pursuant to Section 1782. *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85–86 (3d Cir. 2016) ("Section 1782 expressly incorporates the Federal Rules of Civil Procedure . . . ."); *In re Bayer AG*, 146 F.3d at 195.   "Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify denial of the application." *In re Bayer AG*, 146 F.3d at 195. Accordingly, here, Respondents bear the burden to demonstrate that the Court's July 22, 2022 Order improperly granted Petitioners' Application for discovery under Section 1782. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999).

The legal standards governing a motion to quash a Section 1782 subpoena are well-established. This Court first must consider Respondents' argument that Petitioners have not met any of the statutory requirements. *See In re California State Teachers' Ret. Sys.*, No. 16-4251, 2017 WL 1246349 at *1-2 (D.N.J. Apr. 3, 2017) (citing *O'Keeffe*, 646 F. App'x at 265-66). The statutory requirements are: "(1) that the application seeks discovery from a person or entity who

is a resident or can be found in the district in which the application is filed, (2) that discovery is for use in a proceeding in a foreign tribunal, and (3) the application is made by a foreign or international tribunal or by an interested person." *Id.* at *1 (citing *Kulzer v. Esschem*, 390 F. App'x. 88, 91 (3d Cir. 2010)).

If this Court reaffirms its finding that Petitioners met the statutory requirements, it must decide whether to exercise its discretion to grant the discovery application based on the Court's consideration of four factors identified by the Supreme Court in *Intel* (the "*Intel* factors"). The *Intel* factors are: "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; [and] (4) whether the subpoena contains unduly intrusive or burdensome requests." *O'Keeffe*, 646 F. App'x at 266 (citing *Intel*, 542 U.S. at 264-65).

### 2.    Analysis of the Statutory Requirements

In connection with Petitioners' *ex parte* application, this Court found all of the statutory requirements were satisfied. As Respondents contend none of the requirements have been met, the Court addresses each one in turn.

### a.  Discovery Sought from Entities Who Reside in This District

Respondents do not dispute that they maintain their principal places of business in this District. Rather, they contend that Petitioners seek documents and testimony *from* many Bayer entities and third parties residing outside of New Jersey in violation of Section 1782's requirement that all discovery targets reside in this District. (ECF No. 25-1 at 18-19). Respondents point to

numerous subpoena requests which are directed to "'all global business affiliates and subsidiaries of Bayer, AG.'" (*Id.* at 19). Other subpoena requests seek information "from 'Bayer, SA,'" which is a Brazilian entity. (*Id.* at 20). In opposition, Petitioners claim their subpoenas seek information solely within Respondents' legal possession, custody and control, not from entities outside this Court's jurisdiction or foreign entities abroad. (ECF No. 26 at 1-2).

Respondents' argument is unconvincing. True, the subpoenas seek information *about* entities outside this District, including Respondents' parent corporation, Bayer AG. (ECF No. 1-3 at Exhs. 15-18).  However, Petitioners have represented that they seek discovery limited to materials within Respondents' custody, possession, and control, which supports finding this statutory requirement is met. (ECF No. 26 at 8).

In an analogous context, Magistrate Judge Waldor found the subpoenas appropriately were limited to materials within the New Jersey subsidiary's possession, and thus, satisfied the first statutory requirement. *See In re Application of California State Teachers' Ret. Sys.*, No. 16-4251, 2016 WL 7477753, at *1 (D.N.J. Dec. 28, 2016), *aff'd sub nom.*, *In re California State Teachers' Ret. Sys.*, No. 16-4251, 2017 WL 1246349 (D.N.J. Apr. 3, 2017).  There, the plaintiff sued Volkswagen AG in Germany, and served Section 1782 subpoenas on Volkswagen AG's New Jersey subsidiary - Volkswagen Group of America, Inc. ("VWGoA"). *See* 2016 WL 7477753, at *1. VWGoA then moved to quash, arguing the subpoenas sought information from Volkswagen AG through VWGoA and therefore violated Section 1782's first statutory requirement. *See id.* at *1-2.  In support of its motion to quash, VWGoA pointed to the subpoenas' language, wherein the plaintiff sought documents from VWGoA as well as its parents, subsidiaries, or affiliates. *Id.* The Court rejected VWGoA's argument. *See id.*

Similarly, here, this Court finds that Petitioners seek discovery from Respondents that they possess or control about themselves, their parent company, and Bayer related entities and affiliates, and therefore the targets of the subpoenas are located in this District.  Accordingly, the first Section 1782 statutory requirement has been met. *See In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) ("The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Hence Section 1782 likewise allows extraterritorial discovery."); *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988) (defining control).

### b.  Discovery "For Use" in a Foreign Proceeding

Respondents argue the subpoenaed information is not "for use" in a foreign proceeding. They advance three main arguments.  First, Petitioners do not intend to file suit in Germany against Bayer AG.  Second, the overly broad scope of the discovery sought raises relevancy questions which German courts cannot assess pre-suit.  Finally, it is uncertain whether German courts would accept Section 1782 discovery that does not conform with German court discovery rules. (ECF No. 25-1 at 21-24). Conversely, Petitioners primarily contend their lawsuit is "within reasonable contemplation" and that it is prudent to gather the needed evidence before filing suit since "U.S.-style pre-trial discovery" is unavailable in German civil litigation. (ECF No. 26 at 3-7 and Ex. B at ¶ 38). They further submit that relevance and admissibility of evidence are not properly considered when assessing the "for use" requirement has been met.  (*Id.* at 7-8).  On reply, Respondents contend that Petitioners' claim that they need the discovery before filing suit demonstrates Petitioners' improper use of Section 1782 as a fishing expedition.  (ECF No. 27 at 7-9).

In their supplemental submission of April 19, 2023, Respondents claim that Petitioners' counsel recently filed a virtually identical claim against Bayer entities, including Bayer AG, in the Netherlands.  This related suit undermines Petitioners' position that they reasonably contemplate filing suit in Germany against Bayer AG.  (ECF No. 31-1 at 2).  In their responsive letter of April 24, 2023, Petitioners' counsel disputes having filed the statement of claim in the Netherlands suit. (ECF No. 32 at 1-2).  And, in any event, the Dutch statement of claim is immaterial to the issues before this Court because that pending claim was filed in a Dutch court on behalf of Dutch parties. (*Id.* at 2).  According to Petitioners, they seek discovery in aid of a contemplated suit to be filed in a German court on behalf of Brazilian parties.  (*Id.*).

"Generally, '[f]ederal courts interpret the 'for use' phrase liberally.'" *California State Tchrs. Ret. Sys. v. Novo Nordisk, Inc.*, No. 19-16458, 2020 WL 6336199, at *16 (D.N.J. Oct. 29, 2020) (quoting *In re the Application of Sauren Fonds-Select SICAV*, No. 16-133, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016)).  The inquiry turns on whether the discovery sought is "'something that can be employed with some advantage or serve some use in the proceeding.'" *Id.* (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)). This liberal inquiry does not entail determining whether the information sought is discoverable or admissible in the foreign forum, only that it can be used to the applicant's advantage.  *See In re Bayer AG*, 146 F.3d at 192 (noting discoverability of the evidence in the foreign proceeding is not a requirement); *see also In re the Application of Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *3; *In re Application of Imanagement Servs. Ltd.*, No. 05-2311, 2006 WL 547949, at *3 (D.N.J. Mar. 3, 2006) ("[I]t is sufficient that the applicant intend[s] to offer the evidence to a foreign court. Whether the foreign court will ultimately accept the evidence is beyond this Court's ability to determine.").

Respondents' reliance on *In re Schlich*, 893 F.3d 40, 47 (1st Cir. 2018), is misplaced. There, the respondents did not dispute the petitioners met the "for use" requirement. *See* 893 F.3d 40, 47-48. Accordingly, contrary to Respondents' assertions here, whether the discovery requests are overly broad or irrelevant are not proper inquiries when determining the second statutory factor.

Further, relying on the Supreme Court's determination in *Intel*, courts have noted that "[a] foreign proceeding need not be pending at the time a Section 1782 application is filed, provided it is 'within reasonable contemplation.'" *In re JSC United Chem. Co. Uralchem*, No. 20-3651, 2020 WL 4251476, at *9 (D.N.J. July 24, 2020), *aff'd*, No. 20-3651, 2021 WL 2660205 (D.N.J. June 29, 2021) (quoting *Intel*, 542 U.S. at 259). *See In re Third Eye Capital Corp.*, No. 22-963, 2022 U.S. Dist. LEXIS 42502, at *7-8 n.2 (D.N.J. Mar. 10, 2022); *California State Tchrs. Ret. Sys.*, 2020 WL 6336199, at *16. To that end, "reasonable contemplation" requires the applicant to show "'objective indicium' and a 'concrete basis' that a contemplated action will proceed." *Id.*; *see Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.* 798 F.3d 113, 123-24 (2d Cir. 2015); *In re Ex Parte Application of Iraq Telecom Ltd.*, No. 19-175, 2023 U.S. Dist. LEXIS 38887, at *14-15 (E.D. Pa. Mar. 8, 2023) (collecting cases); *In re Mutabagani*, No. 22-299, 2023 WL 2811621, at *3 (S.D.N.Y. Apr. 6, 2023). In other words, an applicant seeking Section 1782 discovery must present "some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds*, *Accounts and/or Inv. Vehicles v. KPMG, L.L.P.* 798 F.3d at 123-24. *See In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018).

Courts have considered what qualifies as objective indications and concrete bases demonstrating that a contemplated action will go forward. For example, some courts have determined that a sworn statement evincing the intent to litigate and articulating the legal theories

to be pursued is generally sufficient to demonstrate reasonable contemplation. *See In re JSC United Chem. Co. Uralchem*, 2020 WL 4251476, at *11 (collecting cases); *In re Mutabagani*, 2023 WL 2811621, at *3 (finding sworn statement "provides reliable indications that a foreign proceeding is within reasonable contemplation."). This Court finds such reasoning persuasive. Similarly here, Petitioners submitted the first sworn declaration from Spangenberg, their German counsel, as part of their application. (ECF No. 1-2). In his first declaration, he attests that Petitioners' legal claims are drafted, details the legal theories on which they intend to litigate (i.e., defective medical device and failure to warn among other theories), describes the material factual issues that will be at play in the anticipated German litigation, and explains that the claim will be filed in Regional Court of Cologne, Germany. (*Id.* at ¶¶ 7-11, 16). Accordingly, this Court finds that the sworn statements contained in the First Spangenberg Declaration demonstrate that the German action is within "reasonable contemplation."

Further, in their application, Petitioners explain that the discovery sought (e.g., evidence of safety and efficacy; investigation of medical complaints; warnings provided; marketing materials, (ECF No. 1-1 at ¶¶ 52-53)), can be used to support their legal theories. Respondents have not shown otherwise. Importantly, Petitioners do not seek the discovery to help them decide whether to file suit against Bayer AG in Germany. Rather, Petitioners have definitively stated their intention to use the requested information in the anticipated proceeding. *See In re Application of Sauren*, 2016 WL 6304438, at *4 (holding that in the absence of contrary information, the applicant's expressed intent to use the information is sufficient to meet this prong of "for use").

Respondents suggest that because certain Petitioners have filed Essure related actions against South American company, Bayer S.A., in Brazil, the proposed German proceeding against Bayer AG is hypothetical. (ECF No. 25-1 at 24-25; ECF No. 27 at 9). Not so. The filing of

similar Essure lawsuits by some of the same parties against a related Bayer entity in Brazil demonstrates some indication of a real intent to bring an Essure suit against the Bayer parent corporation, Bayer AG in Germany. *See In re Hornbeam Corp.*, 722 F. App'x at 9-10 (affirming that prior related lawsuits by the plaintiff against the defendant supported a finding of reasonable contemplation).

Further, Petitioners' counsel has represented that they did not file a claim in the Dutch action on behalf of the Dutch parties. Accordingly, Respondents' reference to the recently filed Dutch action brought by Dutch parties, not the Brazilian Petitioners, is not relevant to this Court's reasonable contemplation inquiry.

Finally, Respondents contend that there is no reasonable contemplation because Petitioners have purposefully delayed in bringing suit in Germany. The Court finds this argument unpersuasive. While the Court must carefully consider Petitioners' application to prevent a fishing expedition that does not relate to a reasonably contemplated foreign proceeding, delay alone does not negate reasonable contemplation. Indeed, when the delay is justifiably explained, courts have found the proceeding to be within reasonable contemplation. *See, e.g.*, *Bravo Express Corp. v. Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (determining a seven-year delay before applying for § 1782 discovery did not negate reasonable contemplation given (1) the application attached a sworn declaration detailing the facts underlying the contemplated claims, and (2) the applicant's foreign counsel advised against filing suit before gathering evidence); *In re Iraq Telecom Ltd.*, 2023 WL 2402873, at *5 (E.D. Pa. Mar. 8, 2023) (citing *Bravo* to find reasonable contemplation more than two years after a § 1782 application); *In re Mutabagani*, 2023 U.S. Dist. LEXIS 61183, at *8-9 (finding a five-year delay in bringing action in Saudi Arabia justifiable based on sworn declaration of Saudi Arabian counsel attesting to,

among other things, that the action had not yet been filed because counsel needed the discovery requested to satisfy Saudi Arabian pleading requirements). *Cf. Certain Funds, Accounts and/or Inv. Vehicles*, 798 F.3d at 124 (finding that, based on the record before the district court, the petitioners alleged they had retained counsel and considered "the *possibility* of initiating litigation," and thus the prospective litigation was not within "reasonably contemplation."). Here, Petitioners have sufficiently explained the delay in filing suit. They require the discovery sought in support of their anticipated claims.

Accordingly, the Court finds that Petitioners' anticipated foreign proceeding is within "reasonable contemplation," and thus the "for use" requirement is satisfied.

### c. Petitioners as Interested Parties

Respondents argue that because 21 of the 387 Petitioners have individual Essure claims pending in Brazil against related Bayer entities, they are foreclosed from being considered interested parties in any contemplated German lawsuit against Bayer AG. (ECF No. 25-1 at 24-25). They further suggest that these same Petitioners must clear "procedural hurdles" before they can proceed with the German litigation. (*Id.*). In opposition, Petitioners contend that any pending Brazilian claims or collateral representation by Brazilian attorneys do not constrain this small percentage of Petitioners from participating in the contemplated German litigation. This Court agrees.

Respondents' reliance on several cases is misdirected. (ECF No. 27 at 10). In *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669 (2d Cir. 2022) (ECF No. 25-1 at 24-25), the procedural hurdle was not parallel litigation. Rather, the Court's analysis turned on how foreign law limited derivative claims to liquidators, which the plaintiff was not, and how the plaintiff's double-derivative suit depended on no liquidators suing. *See* 33 F.4th 676-81. Respondents'

reference to *Greene v. H & R Block E. Enterprises, Inc.*, 727 F. Supp. 2d 1363 (S.D. Fla. 2010) and *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011) fares no better.  *Greene* did not involve a Section 1782 application or a foreign proceeding.  Instead, the Court analyzed claim splitting based on two actions brought in the Southern District of Florida.  *See Greene*, 727 F. Supp. 2d at 1364-66. And while the Court in *Heraeus Kulzer* analyzed a Section 1782 application, it did not address the interested party statutory requirement. *See* 633 F.3d at 599.

In short, Respondents offer no applicable cases to support their position that some Petitioners cannot be parties to two Essure related cases, and the Court has uncovered none.  To the contrary, at least two courts that have considered whether an applicant, who is a party to a second proceeding, is an interested party within the meaning of Section 1782, have concluded that the applicant is.  *See, e.g.*, *Esses v. Hanania (In re Esses)*, 101 F.3d 873, 875 (2d Cir. 1996) (citing S. Rep. No. 1580, 88th Cong., 2d Sess. at 8 (1964)); *In re Gazprom Latin Am. Servicios, C.A.*, 2016 U.S. Dist. LEXIS 87175, at *2 n.1 (S.D. Tx. July 6, 2016).  Accordingly, the Court finds that these 21 Petitioners, like the other 366 Petitioners, have met the final statutory requirement.[5]

### 3.    Discretionary/*Intel* Factors

Respondents contend that even if Petitioners could satisfy the Section 1782 statutory requirements, this Court should exercise its discretion to deny Petitioners' application based on all four *Intel* factors.  The Court examines each of the four factors.

### a.   First *Intel* Factor

Respondents argue that the first factor weighs in favor of quashing the subpoenas for two reasons.  First, since Petitioners have not filed suit, it is uncertain whether Respondents will be

---

[5] As an aside, even if the Court were to accept Respondents' argument that the 21 Petitioners are foreclosed from being interested parties in any German litigation, Respondents fail to explain why the other 366 Petitioners would not be deemed interested parties to satisfy this statutory requirement.

named as parties.  (ECF No. 25-1 at 26-27).  Second, the subpoenas seek information from Bayer AG, an intended party, and its affiliates. (*Id.* at 27).  In opposition, Petitioners argue that Respondents fail to meet their burden of establishing this first factor.  Specifically, Petitioners have submitted a sworn declaration from counsel that Respondents are not targets of the anticipated German claims and will not be named as parties to the German litigation.  (ECF No. 26 at 10-11, ECF No. 1-3 at ¶ 9). Petitioners continue that pre-suit correspondence between Petitioners' counsel and counsel for Bayer AG only further demonstrates Respondents are not targets.  (Id. at 11; ECF No. 1-2 at Exh. 2).  Finally, Petitioners contend that although the subpoenas seek discovery about Bayer AG and its affiliates, the subpoenas seek information from Respondents. (*Id.* at 12-13).

Preliminarily, the Court rejects Respondents' argument that Petitioners have failed to carry their burden as to the first factor.  Respondents improperly place the burden on Petitioners. *See In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (holding that the party opposing § 1782 discovery bears the burden of demonstrating any facts warranting its denial).  Having identified who properly bears the burden, the Court next considers whether Respondents have provided facts warranting denial.

*Intel* suggests that the appropriate inquiry on this first factor is whether the persons from whom discovery is sought are "outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S. at 264. *See In re Application of Sauren*, 2016 WL 6304438, at *13; *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269, 2019 WL 168828, at *6 (D.N.J. Jan. 10, 2019). *In re California State Teachers' Ret. Sys.*, 2017 WL 1246349 at *2 (citing *Kulzer,* 390 F. App'x at 91).  As District Judge McNulty recently observed, in determining whether the foreign tribunal has the required authority over an entity, this "should be satisfied by

15

a showing that the entity was an actual party to the foreign litigation." *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at * 6 (citing *Intel*, 542 U.S. at 264).  Here, since there is undisputedly no pending foreign litigation, Respondents do not (and cannot) claim that they are parties to foreign litigation.  This is reason enough to find the first *Intel* factor weighs in Petitioners' favor.  Respondents' position that they may be named in the contemplated German litigation is belied by Petitioners' counsel's sworn declaration that Respondents will not be named as parties to the German litigation.

Likewise, the Court finds unconvincing Respondents' argument that because the subpoenas seek information from Bayer AG, an intended party, and its affiliates, this warrants denying discovery. It is true that many of the documents sought in the subpoenas concern communications *between Respondents and other Bayer entities, including Bayer AG*.  (ECF No. 1-3 at Exhs. 15-18).  However, this factor focuses on whether the discovery sought is within the German court's reach.  Respondents do not argue that the documents, sought from them or about them, are not located in this District.  They also do not present evidence showing that the documents sought are located in Germany, which serves as an independent basis to find this first factor weighs in favor of granting the application.  *See In re California State Teachers' Ret. Sys.*, 2017 WL 1246349 at *3; *In re Martin & Harris Priv. Ltd*, No. 20-17070, 2021 WL 2434069, at *4 (D.N.J. June 14, 2021).

**b.  Second *Intel* Factor**

Next Respondents argue that Petitioners have not shown German courts are receptive to Section 1782 discovery or would find the discovery sought here relevant. (ECF No. 25-1 at 27-30). In response, Petitioners argue Respondents fail to overcome Section 1782's presumption of receptivity, and courts have routinely found this second factor weighs in favor of granting

applications in support of both contemplated and pending German proceedings. (ECF No. 26 at 13-15). Petitioners continue that there is no relevancy or admissibility inquiry under this second discretionary factor. (*Id.* at 17-18).

The second *Intel* factor asks courts to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad," and the receptivity towards United States judicial assistance. *In re O'Keeffe*, 646 F. App'x 266. *See Intel*, 542 U.S. at 264-65. Courts may not, however, analyze whether the subpoenaed materials are discoverable or admissible in the foreign tribunal. *See id. Intel* at 260; *Bayer AG*, 146 F.3d at 195; *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at * 10 (citing *O'Keeffe*, 646 F. App'x at 267).

Here, Respondents again point to the absence of a pending German proceeding to justify quashing the subpoenas. (ECF No. 25-1 at 27).  In support of their position, Respondents present the Declaration of Professor Dr. Moritz Brinkmann who attests that it is uncertain what information a German court would consider evidence since no lawsuit is pending and whether German courts are generally receptive to Section 1782 discovery. (ECF No. 25-1 at 29 and ECF No. 25-11 at ¶¶ 7-21).  Petitioners rely on Dr. Astrid Stadler who attests that German courts are "highly receptive" to evidence obtained through U.S. judicial assistance and provides her own analysis of German Civil Procedure.   (ECF No. 26-2 at ¶¶ 5-13).   Giving these conflicting declarations and interpretations of German civil procedure, the Court finds it would be improper to wade into interpreting discovery law applicable to Germany when conducting the Section 1782 application analysis.  *See In re Biomet*, 742 F. App'x at 697 ("Surveying German law to determine a particular document's admissibility or probative value is exactly the kind of 'speculative foray[] into legal

territories unfamiliar to federal judges,' that would be 'in tension' with § 1782.").  Accordingly, this Court declines to do so.

District Judge McNulty's analysis of the second *Intel* factor in *In re Application for Discovery for Use in Foreign Proceeding* is instructive.  Faced with conflicting expert declarations and interpretations of Brazilian law, Judge McNulty noted that the Third Circuit has made clear that "'district courts are discouraged from engaging in the interpretation of foreign law when conducting a Section 1782 analysis,' at least in case where the evidence was 'conflicting' and not the subject of 'authoritative proof.'"  2019 WL 168828, at * 10 (citing *O'Keeffe*, 646 F. App'x at 267).  Guided by the Third Circuit's directives in *O'Keeffe* where Hong Kong law was at issue, Judge McNulty found that the parties' clashing expert declarations did not qualify as the type of "'authoritative' proof that would permit the court to rule without enmeshing itself in complex determinations of foreign law.'"  *Id.* (citing *O'Keeffe*, 646 F. App'x at 267).

Judge McNulty further noted that the Third Circuit in *O'Keeffe* found it "highly relevant that Hong Kong, like Brazil, was a signatory to the Hague Convention.  That circumstance alone, *O'Keeffe* held, 'indicates that Hong Kong's courts are receptive to American judicial assistance.'"  *Id.* (citing *O'Keeffe*, 646 F. App'x at 267).  Similarly here, Dr. Brinkmann attests that Germany is a signatory to the Hague Convention despite his assertion that German academics and authors question whether the recently changed declaration regarding Article 23 of the Hague Convention impacts the admissibility of evidence obtained through Section 1782 proceedings.  (ECF No. 25-11 at ¶ 30).  This Court agrees with Judge McNulty's analysis of the second *Intel* factor and adopts his sound reasoning and conclusion here to find that the second *Intel* factor weighs in favor of Petitioners.[6]

---

[6] The Court notes that other courts have routinely found German courts to be receptive to Section 1782 discovery, which serves as further support to find the second *Intel* factor weighs in Petitioners' favor. *See Kulzer v. Esschem,*

###### c.   Third *Intel* Factor

As to the third factor, Respondents contend that Petitioners are trying to circumvent German discovery laws by failing to first seek the discovery in Germany.  (ECF No. 25-1 at 31).  They further contend that although discovery is permitted under German law, it is more limited, and so a German court would most likely view the breadth of Petitioners' subpoena requests as a fishing expedition.  (*Id.* at 31-32; ECF No. 25-11 at ¶¶ 14-20; ECF No. 27 at 14).  The thrust of their argument is the perception that Petitioners have side-stepped Germany's discovery rules by first seeking discovery through Section 1782.  In opposition, Petitioners first counter that failure to seek discovery first in the foreign proceeding does not constitute an attempt to circumvent foreign proof gathering restrictions.  Second, Respondents incorrectly claim that the discovery sought here would not be permitted under German law. (ECF No. 26 at 18-19).

The third *Intel* factor considers whether the Section 1782 applicant is trying to circumvent "'foreign proof gathering restrictions or other policies of a foreign country'" or the United States. *In re California State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 (quoting *O'Keeffe*, 646 F. App'x at 266).  Although "'[t]he court must consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules; . . . that consideration cannot serve as the sole determining factor because the statute does not reference a requirement of discoverability under the foreign country's laws.'" *California State Tchrs. Ret. Sys.*, 2020 WL 6336199, at *23 (quoting *Kulzer*, 390 F. App'x at 92).  Importantly, as Petitioners have not yet filed suit in Germany, it is unclear how they could obtain the discovery sought through local German discovery procedures. To the extent Respondents suggest that Petitioners' failure to file suit in Germany

---

*Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011); *In re California State Teachers' Ret. Sys.*, No. 16-4251, 2017 WL 1246349, at *3 (D.N.J. Apr. 3, 2017); *In re Application of Johannes Roessner to Take Discovery Pursuant to 28 U.S.C. 1782 in Aid of Foreign Litigants or Proc.*, No. 21-513, 2021 WL 5042861, at *3 (S.D.N.Y. Oct. 29, 2021).

demonstrates Petitioners' attempt to circumvent foreign procedures, this Court rejects that position. *See O'Keeffe*, 646 F. App'x at 268. In any event, this Court finds persuasive Judge Waldor's determination in *California State Teachers' Ret. Sys.* that the third *Intel* factor weighed in favor of the Section 1782 applicant who "presented case law showing German courts often welcome this [subpoenaed] evidence as part of their proceedings." *California State Teachers' Ret. Sys*, 2016 WL 7477753 at \*3.

Furthermore, circumvention is less apparent when, as here, the subpoenaed entity is outside the foreign court's jurisdiction, and thus the discovery could not be ordered without Section 1782 assistance. *See In re Mesa Power Grp., LLC*, No. 11-280, 2012 WL 6060941, at \*7 (D.N.J. Nov. 20, 2012). Instead, something must indicate bad faith or gamesmanship that undercuts Section 1782's goals of comity and efficiency. *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at \*11-12. Respondents here have not offered evidence to indicate any such bad faith conduct. Lastly, the fact that discovery in the foreign court is more limited than in the United States does not prove circumvention. *See Bayer AG*, 146 F.3d at 195. *California State Tchrs. Ret. Sys.*, 2020 WL 6336199, at \*9 (quoting *California State Teachers' Ret. Sys*, 2017 WL 1246349, at \*3 n.3).

Respondents' assertion that German courts would find the subpoenas to be overbroad is not a basis to find circumvention has been attempted. As courts granting Section 1782 applications for German proceedings have concluded, the narrow German discovery rules do not serve as a basis to find circumvention. *See Heraeus Kulzer*, 633 F.3d at 595-97 (acknowledging German discovery rules are narrower than ours but finding no circumvention); *In re California State Teachers' Ret. Sys.*, 2017 WL 1246349, at \*2 (same); *In re Application of Sauren*, 2016 WL 6304438, at \*6 (same). Moreover, Respondents' claim that Petitioners could not obtain the

discovery in Germany, (ECF No. 25-1 at 31-32; ECF No. 27 at 13), bolsters the need for the discovery sought in this District. *Cf. In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at *11-12 (finding circumvention in part because nothing indicated the discovery would be unavailable in the foreign forum, and stating, "[o]ne abuse would be for a party to seek discovery in a federal district court that it could obtain in the foreign jurisdiction."). In sum, Respondents fail to show Petitioners are trying to circumvent German or United States proof-gathering polices, and thus this factor weighs in Petitioners' favor.

### d.  **Fourth *Intel* Factor**

Lastly, Respondents assert that Petitioners' subpoenas are unduly burdensome and intrusive because the definitions are overbroad and the voluminous requests seek irrelevant information. (ECF No. 25-1 at 32-36).  Petitioners counter the subpoenas are proportional to the needs of the case, but in any event, issues of scope and burden should be negotiated and do not warrant quashing. (ECF No. 26 at 20-25).

The fourth *Intel* factor requires courts to consider whether the discovery requests are "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  As stated previously, the Federal Rules of Civil Procedure apply to determining whether to permit discovery pursuant to Section 1782 applications. *See Ex Parte Glob. Energy*, 647 F. App'x at 85-86.  "'Assessment of the fourth factor is virtually identical to the familiar 'overly burdensome analysis that is integral to the Federal Rules.'" *California State Tchrs. Ret. Sys.*, 2020 WL 6336199, at *10 (quoting *in re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x at 85–86).  Thus, the requested discovery must be reasonably calculated to lead to the discovery of admissible evidence, consistent with Rule 26(b)(1), and avoid imposing undue burden or expense on the subpoenaed entity, pursuant to Rule 45(d). *See Id.*  When a Section 1782 subpoena is found unduly intrusive or burdensome, "a district court may 'reject[]

or trim[]' Section 1782 discovery requests that are 'unduly intrusive or burdensome.'"   *In re Mutabagani*, No. 22-299, 2023 WL 2811621, at *12 (quoting *Intel Corp.*, 542 U.S. at 265).

Here, as detailed in Petitioner's application, (ECF No. 1-1) and in the four subpoenas themselves, Petitioners seek discovery necessary for their reasonably contemplated German litigation against Bayer AG.  Specifically, they seek "evidence related to the safety and efficacy of the Essure coil as well as efforts taken by [Bayer AG] and its affiliates to investigate and guarantee the same . . . [as well as] the various measures taken by [Bayer AG] and its affiliates as part of their commercialization and lobbying efforts in the Brazilian Market." (ECF No. 1-1 at ¶¶ 52-53; *see generally* Subpoenas, ECF Nos. 1-3 at Exs. 15-18).  The Court finds that the requested materials and testimony as a whole are relevant to Bayer AG's alleged manufacturing and sale of a defective medical implant and failure to warn.  As a result, Respondents bear the burden of showing such discovery requests are unduly burdensome.

In support of their burden, Respondents refer to the expansive definitions of the "Bayer Group of Companies" which includes among other individuals and entities, "shareholders," financial advisors," and "bankers."  They also point to the numerous requests and topics for deposition, which seek, among other materials, information exchanged in pending U.S. litigation against the Bayer entities.  This Court does have concerns about the breadth of the subpoenas based on the many broad definitions and expansive categories of information sought.  For example, the deposition subpoenas seek testimony about a wide range of topics including, but not limited to, the identity structure, and function of each department, group, region and/or division of Respondents and their predecessors as well as the rules, regulations, processes and procedures, which govern(ed) the sharing of Essure-related pharmacovigilance data across Bayer entities and between Bayer, SA and Bayer Inc. (*Id.* Exs. 17 & 18 at Topic 2, 6, and 7).  Tellingly, Petitioners

respond that the proper course is for the parties to meet and confer on scope and burdensomeness. To be clear though, on this record, this Court cannot conclude that the discovery sought will create an undue burden on Respondents.

Before the instant motions were filed, the parties met and conferred to negotiate the scope of the subpoenas.  As previously noted, those efforts were unsuccessful.  However, by further meeting and conferring as this Court will order, Petitioners and Respondents should be able to narrow the scope of discovery sought and agree on proper search terms to be used to capture any relevant discovery information.  *See In re Biomet*, 742 F. App'x. at *699 (finding it was erroneous for the district court "'to turn down [Biomet]'s discovery request flat . . . without requiring [Heraeus] to negotiate with [Biomet] over cutting down the request.'") (quoting *Heraeus Kulzer, GmbH*, 633 F.3d at 597)).  Applying this Court's guidance, the parties should be able to agree on modifying the scope of the discovery sought, which should alleviate any undue burden claims. This Court will retain jurisdiction to address any unresolved disputes that remain regarding the appropriate scope of discovery following the parties' good faith attempts to informally resolve their disputes through the meet and confer process.

Based on the foregoing reasons, the Court finds that the four *Intel* factors weigh in favor of granting Petitioner's Section 1782 application.  Accordingly, Respondents' motion to quash is denied.

Finally, as detailed above, the merits of the motion to quash are governed by Section 1782's statutory requirements as well as the discretionary *Intel* factors.  As such, to the extent Respondents advance separate preemption and merits-based arguments in support of its motion, these are not proper considerations.  Whether Petitioners can prevail on the merits of their anticipated legal claims is not properly raised with this Court.  Accordingly, the Court declines to analyze

Respondents' additional contentions in this discovery dispute where Petitioners seek Section 1782 aid.

**B. Motion to Strike**

Local Civil Rule 7.2(a) provides, in relevant part, that "[a]ffidavits, declarations, [and] certifications . . . shall be restricted to statements of fact within the personal knowledge of the signatory.  Arguments of the facts and the law shall not be contained in such documents..  Legal arguments . . . in such documents will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions, or both."  L. Civ. R. 7.2(a).  *See Beom Su Lee v. Karaoke*, No. 18-8633, 2019 WL 2537932, at *3 (D.N.J. June 19, 2019).  In opposition, Petitioners argue the Third Spangenberg Declaration is limited to statements of objective fact within Dr. Spangenberg's personal knowledge and therefore complies with the Local Rule 7.2. (ECF No. 26 at 2-7).

Here, except for several background paragraphs about the declarant's education and experience, the Third Spangenberg Declaration is composed of almost entirely arguments of fact and law and purported expert opinion about German law and Respondents' expert's opinion regarding same.  Examples abound, but the following paragraphs illustrate the problem:

- "In my view, the Brinkmann Declaration gives a selective account of German law and practice only and, therefore, ultimately, misrepresents the relevant situation under German law and in the future German litigation."

- "Third, Professor Brinkmann's explanations on the available instruments for requesting documents from an opposing party in German civil litigation (Brinkmann Declaration, paras. 14-20) are, in my view, irrelevant to the issues at hand."

- "Fifth, in view of the aforementioned points, Professor Brinkmann's statement that there are "virtually no decisions by German courts on the question of whether evidence obtained by § 1782 proceedings is admissible" is also a red herring."

(ECF No. 26 at Ex. C at ¶¶ 8, 15, & 21).  Petitioners represent that Dr. Spangenberg is their German legal counsel.  They have not identified him as an expert witness.   In accordance with Local Civil Rule 7.2(a), this Court exercises its discretion to disregard all expert opinions, and arguments of fact and law in the Third Spangenberg Declaration.  As such, this Court will grant Respondents' motion to strike the Third Spangenberg Declaration.  The Court's ruling, however, does not impact its findings in connection with Respondents' motion to quash because the Court did not consider the Third Spangenberg Declaration in deciding the merits of the motion to quash.

## IV.     CONCLUSION

For the foregoing reasons, Respondents' motion to quash is **DENIED**.  Respondents' motion to strike the Third Spangenberg Declaration is **GRANTED**.  An appropriate form of order will be entered.

_s/ Jessica S. Allen_____
**HON. JESSICA S. ALLEN**
**United States Magistrate Judge**

Dated:  August 4, 2023

cc:     Hon. Esther Salas, U.S.D.J.